**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF INDIANA**
**HAMMOND DIVISION**

| | |
|---|---|
| GLORIA D. TERRY, )<br>    Plaintiff, )<br>)<br>v. )<br>)<br>GARY COMMUNITY SCHOOL )<br>CORPORATION, )<br>    Defendant. ) | CAUSE NO.: 2:15-CV-129-JEM |

**OPINION AND ORDER**

This matter is before the Court on a Motion for Summary Judgment [DE 94], filed by Defendant Gary Community School Corporation on October 20, 2017. For the following reasons, the motion is granted.

**I.    Procedural Background**

On April 4, 2015, Plaintiff Gloria D. Terry filed her Complaint. On May 5, 2015, Plaintiff filed a First Amended Complaint, and on August 17, 2015, Plaintiff filed a Second Amended Complaint. In her Second Amended Complaint, Plaintiff alleges that she was discriminated against on the basis of her gender when she was transferred to assistant principal positions after the school where she served as principal was closed and when she was not appointed to fill an available principal position that instead went to a male candidate. The Second Amended Complaint includes a discrimination claim under Title VII of the Civil Rights Act of 1964, an unequal pay claim under the Equal Pay Act, equal protection and due process claims under the Fourth Amendment of the U.S. Constitution pursuant to 42 U.S.C. § 1983, and a claim under the Indiana Open Door Act. On June 7, 2016, District Court Judge Theresa L. Springmann granted Plaintiff's Partial Motion for Summary Judgment and entered judgment in her favor on the Open Door Act claim. On October 20, 2017,

Defendant filed the instant Motion for Summary Judgment on the remaining claims. Plaintiff filed a response on November 16, 2017, and Defendant filed a reply on November 30, 2017.

The parties filed forms of consent to have this case assigned to a United States Magistrate Judge to conduct all further proceedings and to order the entry of a final judgment in this case. Therefore, this Court has jurisdiction to decide this case pursuant to 28 U.S.C. § 636©.

## II. Summary Judgment Standard

The Federal Rules of Civil Procedure mandate that motions for summary judgment be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Rule 56 further requires the entry of summary judgment, after adequate time for discovery, against a party "who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (citing Fed. R. Civ. P. 56(c)). "[S]ummary judgment is appropriate – in fact, is mandated – where there are no disputed issues of material fact and the movant must prevail as a matter of law. In other words, the record must reveal that no reasonable jury could find for the non-moving party." *Dempsey v. Atchison, Topeka, & Santa Fe Ry. Co.*, 16 F.3d 832, 836 (7th Cir. 1994) (citations and quotations omitted).

A party seeking summary judgment bears the initial responsibility of informing the court of the basis for its motion and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, that it believes demonstrate the absence of a genuine issue of material fact. *See Celotex*, 477 U.S. at 323; Fed. R. Civ. P. 56©. The moving party may discharge its initial responsibility by simply "'showing' – that

is, pointing out to the district court – that there is an absence of evidence to support the nonmoving party's case." *Celotex*, 477 U.S. at 325. When the nonmoving party would have the burden of proof at trial, the moving party is not required to support its motion with affidavits or other similar materials negating the opponent's claim. *Id.* at 323, 325; *Green v. Whiteco Indus., Inc.*, 17 F.3d 199, 201 n.3 (7th Cir. 1994); *Fitzpatrick v. Catholic Bishop of Chicago*, 916 F.2d 1254, 1256 (7th Cir. 1990). However, the moving party, if it chooses, may support its motion for summary judgment with affidavits or other materials, and, if the moving party has "produced sufficient evidence to support a conclusion that there are no genuine issues for trial," then the burden shifts to the nonmoving party to show that an issue of material fact exists. *Becker v. Tenenbaum-Hill Assoc.*, 914 F.2d 107, 110-111 (7th Cir. 1990) (citations omitted); *see also Hong v. Children's Mem'l Hosp.*, 993 F.2d 1257, 1261 (7th Cir. 1993).

Once a properly supported motion for summary judgment is made, the non-moving party cannot resist the motion and withstand summary judgment by merely resting on its pleadings. *See* Fed. R. Civ. P. 56(e); *Donovan v. City of Milwaukee*, 17 F.3d 944, 947 (7th Cir. 1994). Rule 56(e) provides that "[i]f a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may . . . consider the fact undisputed for purposes of the motion [or] grant summary judgment if the motion and supporting materials – including the facts considered undisputed – show that the movant is entitled to it . . . ." Fed. R. Civ. P. 56(e)(2), (3); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-50 (1986). Thus, to demonstrate a genuine issue of fact, the nonmoving party must "do more than simply show that there is some metaphysical doubt as to the material facts," but must "come forward with

'specific facts showing that there is a *genuine issue for trial*.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986) (quoting Fed. R. Civ. P. 56(e)) (emphasis in original).

In viewing the facts presented on a motion for summary judgment, a court must construe all facts in a light most favorable to the non-moving party and draw all legitimate inferences in favor of that party. *See Liberty Lobby*, 477 U.S. at 255; *Srail v. Vill. of Lisle*, 588 F.3d 940, 948 (7th Cir. 2009); *NLFC, Inc. v. Devcom Mid-Am., Inc.*, 45 F.3d 231, 234 (7th Cir. 1995). A court's role is not to evaluate the weight of the evidence, to judge the credibility of witnesses, or to determine the truth of the matter, but instead to determine whether there is a genuine issue of triable fact. *See Liberty Lobby*, 477 U.S. at 249-50.

## III.  Material Facts

Plaintiff was employed by Defendant school district from 1980 until her retirement in 2015. From approximately 2002 through mid-2014, she served as the principal of Brunswick Elementary School. The district saw steep declines in enrollment which led Defendant to close several schools, including Brunswick, which was closed at the end of the 2013-2014 school year. Teachers were laid off, and principals were assigned to other administrative roles within the school district. Plaintiff applied for an open position as principal at Marquette Elementary School, as did another female candidate.[1] Sheldon Cain had served as assistant principal and acting principal at Marquette, and was the interim principal there during the 2013-2014 school year.

The school district selected Mr. Cain to serve as Marquette's principal for the 2014-2015 school year. Meanwhile, Defendant transferred Plaintiff to assistant principal positions, first at

---

[1] Defendant may disagree as to whether the other female was in fact an applicant for the position. Because the Court views all facts in the light most favorable to the Plaintiff, it is assumed that the other female was indeed a candidate.

Jefferson Elementary School, then at Marquette, where she served under Mr. Cain. Plaintiff's salary and benefits did not decrease as a result of either transfer, with her salary remaining at $84,308, the same amount she had been paid when she was principal at Brunswick. However, Mr. Cain was paid $85,986 during his time as principal. A district representative testified that, had she been appointed principal at Marquette, Plaintiff would have received the higher salary. Salaries had been frozen since 2009, due to the ongoing financial crisis in the school district.

On or about October 13, 2014, Plaintiff filed a Charge of Discrimination with the Equal Employment Opportunity Commission, which in turn issued a Dismissal and Notice of Rights on January 27, 2015. On February 25, 2015, Defendant sent Plaintiff a non-renewal notice which indicated that the school district did not intend to renew her contract as an administrator, leaving her the option to retire or to return to the classroom as a teacher. To preserve her benefits, Plaintiff elected to retire at the end of the 2014-2015 school year. Mr. Cain had also received non-renewal notices in June 2006 and January 2012. In January 2015, Mr. Cain received a notice that the school district was "considering" non-renewal of his contract as well, and he also elected to retire at the end of the 2014-2015 school year.

**IV.    Analysis**

    A.    <u>Count I: Title VII Discrimination Claim</u>

Defendant moves for summary judgment on Plaintiff's claim for sex discrimination under Title VII of the Civil Rights Act of 1964. Title VII prohibits discrimination "against any individual with respect to his [or her] compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." The legal standard governing employment discrimination claim is whether the evidence as a whole would permit a reasonable

5

factfinder to conclude that the plaintiff's race, sex, or other protected characteristic was the cause of an adverse employment action against her. *Owens v. Old Wis. Sausage Co.,* 870 F.3d 662, 666 (7th Cir. 2017); *Ortiz v. Werner Enter., Inc.,* 834 F.3d 760, 765 (7th Cir. 2016). "Evidence must be considered as a whole, rather than asking whether any particular piece of evidence proves the case by itself." *Ortiz* at 434 F.3d 765.

Because the evidence underlying discrimination claims may be circumstantial, the Supreme Court established a useful burden-shifting framework as a guide. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973); *David v. Bd. of Tr. of Cmty. Coll. Dist. No. 508,* 846 F.3d 216, 224 (7th Cir. 2017) (describing the *McDonnell Douglas* framework as "a means of organizing, presenting, and assessing circumstantial evidence in frequently recurring factual patterns"). Under that framework, Plaintiff may first establish a prima facie case of discrimination by providing evidence that she is a member of a protected class, was performing well enough to meet her employer's legitimate expectations, and suffered an adverse employment action; and that similarly situated employees not in the protected class were treated more favorably. *See David*, 846 F.3d at 225; *Naik v. Beohringer Ingelheim Pharm., Inc.,* 627 F.3d 596, 599-600 (7th Cir. 2010). If the plaintiff meets her burden of establishing a prima facie case, a rebuttable presumption of discrimination arises, and the burden shifts to the defendant to "articulate some legitimate, nondiscriminatory reason" for the challenged action. *McDonnell*, 411 U.S. at 802. If the defendant provides a legitimate, nondiscriminatory reason for its actions, the burden shifts back to the plaintiff to offer evidence indicating that the proffered reason is actually a pretext for illegal discrimination. *Id.* "Pretext involves more than just faulty reasoning or mistaken judgment on the part of the employer; it is a

6

lie, specifically a phony reason for some action." *Burton v. Bd. of Regents of U. of Wis. Sys.,* 851 F.3d 690, 690 (7th Cir. 2017) (quotations and citations omitted).

As an initial matter, it is not apparent that Plaintiff suffered an adverse employment action. *See Lewis v. City of Chicago,* 496 F.3d 645, 652 (7th Cir. 2007). Such actions include (1) reducing an employee's pay or benefits; (2) significantly reducing her career prospects; or (3) changing her working conditions in a way that subjects the employee to a humiliating, degrading, unsafe, unhealthful, or otherwise significant negative alteration in the workplace environment. *Alamo v. Bliss,* 864 F.3d 541 F.3d 551, 552 (7th Cir. 2017) (citing *Herrnreiter v. Chicago Hous. Auth.,* 315 F.3d 742, 744 (7th Cir. 2002). Even a nominally lateral transfer with no change in financial terms can constitute an adverse employment action where it "significantly reduces the employee's career prospects by preventing [her] from using the skills in which [she] is trained and experienced, so that the skills are likely to atrophy and [her] career is likely to be stunted." *Herrnreiter,* 315 F.3d at 744. The parties agree that Plaintiff's salary and benefits were unchanged by her transfer to the assistant principal position, and they likewise agree that many of the duties and skill requirements of principals and assistant principals are identical. Plaintiff has not set forth any facts to show that her new workplace environment was in any way humiliating, degrading, or unsafe, or that her principal skills were so unused as to "atrophy" during her time as assistant principal. Plaintiff did experience a modest decrease in responsibility and prestige due to the job transfers, but she has not introduced facts tending to prove that the transfers significantly reduced her career prospects, leaving an open question as to whether she could prove that an adverse employment action occurred, which might prove fatal to her prima facie case.

Nevertheless, assuming that an adverse employment action did occur, Defendant argues that summary judgment should be granted in its favor because Plaintiff would fail in the final step of the burden-shifting analysis. Defendant proffers non-discriminatory reasons for its actions towards Plaintiff, explaining that it transferred Plaintiff from a principal to an assistant principal position because enrollment drops in the district led to the closure of several schools, including the school where Plaintiff was serving as principal at the time. Defendant also asserts that it selected Mr. Cain over Plaintiff because Mr. Cain's experience at and familiarity with Marquette Elementary School made him the best candidate, not because of his sex or gender. Finally, Defendant points to the fact that the majority of its administrators, including a majority of its principals, are female as further evidence that it does not discriminate based on sex.

The Seventh Circuit has held that

> where an employer's proffered non-discriminatory reason for its employment decision is that it selected the most qualified candidate, evidence of the applicants' competing qualifications does not constitute evidence of pretext 'unless those differences are so favorable to the plaintiff that there can be no dispute among reasonable persons of impartial judgment that the plaintiff was clearly better qualified for the position at issue.' In other words, '[i]n effect, the plaintiff's credentials would have to be so superior to the credentials of the person selected for the job that 'no reasonable person, in the exercise of impartial judgment, could have chosen the candidate selected over the plaintiff for the job in question.'

*Millbrook v. IBP, Inc.*, 280 F.3d 1169, 1180–81 (7th Cir. 2002) (quoting *Deines v. Tex. Dept. of Prot. and Regulatory Servs.*, 164 F.3d 277, 279 (5th Cir. 1999), *Byrnie v. Town of Cromwell*, 243 F.3d 93, 103 (2d Cir. 2001)). To prove that Defendant's proffered reason is merely pretext, Plaintiff points to a job posting that said that the position required an interview and states that Mr. Cain did not actually interview for the job, while Plaintiff received the top score from the interview

8

committee. She also notes that another female candidate was rejected, but does not provide any details about that candidate's qualifications or experience. Plaintiff does not otherwise dispute Mr. Cain's experience or qualifications.

In this case, the job posting and Plaintiff's interview score on their own do not create a genuine issue of material fact because Plaintiff has not demonstrated that her credentials were so superior to those of Mr. Cain that no reasonable employer would have hired him instead of hiring her. Nor would the evidence, taken as a whole, lead a jury to find that Plaintiff's sex caused her reassignment to assistant principal positions, given the numerous school closures that had occurred. Accordingly, summary judgment as to Count I is appropriate.

B.  Count II: Unequal Pay

Defendant also moves for summary judgment on Plaintiff's claim for violation of the Equal Pay Act, which prohibits paying wages to employees at a rate less than the rate paid to employees of the opposite sex for equal work on jobs of equal skill, effort, and responsibility, unless the pay differential is based on a factor other than sex. 29 U.S.C. § 206(d)(1). "In order to establish a prima facie case under the Equal Pay Act, a plaintiff must show "(1) higher wages were paid to a male employee, (2) for equal work requiring substantially similar skill, effort and responsibilities, and (3) the work was performed under similar working conditions." *David,* 846 F.3d at 230 (quoting *Merillat v. Metal Spinners, Inc.,* 470 F.3d 685, 695 (7th Cir. 2006)). Once those factors are established, the burden of proof shifts to the employer "to establish one of four statutory defenses," showing that "the pay disparity is due to (i) a seniority system; (ii) a merit system; (iii) a system which measures earnings by quantity or quality of production; or (iv) any factor other than sex." *Warren v. Solo Cup Co.,* 516 F.3d 627, 630 (7th Cir. 2008) (quoting *Fallon v. State of Ill.*, 882 F.2d

9

1206, 1211 (7th Cir. 1989)) (other quotations and citations omitted). "The fourth exception is a broad catch-all exception and embraces an almost limitless number of factors, so long as they do not involve sex," but the factor used as a justification must be "used and applied in good faith." *Id.*

Defendant first argues that, as an assistant principal, Plaintiff was paid less than Mr. Cain because Mr. Cain was compensated for the additional duties which he assumed as principal, not because of sex or gender. Def. Br. at 10. As to the 2014-2015 school year, no reasonable juror could conclude that the jobs of principal at Marquette and assistant principal at Marquette are exactly the same. Plaintiff herself acknowledges in her discrimination claim that the position of principal confers both additional prestige and the ultimate responsibility for the administration of the school. Therefore, Plaintiff has not made a prima facie showing of an equal pay violation for that year.

As to the 2013-2014 school year, Plaintiff, as principal at Brunswick, was paid less than Mr. Cain, who was then the acting or interim principal at Marquette. These were jobs of "equal skill, effort, and responsibility;" thus, the onus is on Defendant to show that the differential is based on a factor other than sex. Defendant argues that the difference is due to a salary freeze since 2009, which set the salaries in each position at the level the individuals holding those positions were paid at that time, based on their seniority. Thus, the differential in pay between the Brunswick principal position and the Marquette principal position dates back to the salary freeze. Plaintiff presents no argument or evidence whatsoever to rebut that defense. Plaintiff claims that the principal at Marquette was paid more because he was a man, but she neither disputes the existence of the salary freeze nor provides evidence as to the sex of the Marquette principal at the time of the freeze. For at least some of the period since 2009, the higher-paid position was held by the female Marquette principal who immediately preceded Mr. Cain. Additionally, had Plaintiff been selected for the job

10

of principal, she would have received the higher salary associated with that position. In the absence of any other evidence, a reasonable jury could not find that the sex of the administrator was a factor in determining the salary of any principal or assistant principal at Marquette or Brunswick for the 2013-2014 or the 2014-2015 school year.

      C.      <u>Count III: Constitutional Claims</u>

Plaintiff also asserts equal protection and due process claims under the Fourteenth Amendment of the United States Constitution pursuant to 42 U.S.C. Section 1983, which allows claimants to proceed against state and local government entities for deprivation of constitutional rights. The same standards for proving intentional discrimination apply to Title VII and Section 1983 equal protection claims. *Hildebrandt v. Ill. Dept. of Nat. Res.,* 347 F.3d 1014, 1036 (7th Cir. 2003) (quotations and citations omitted). Therefore, Plaintiff's Section 1983 equal protection claim fails on the same basis as the Title VII discrimination claim: she has failed to rebut Defendant's non-discriminatory reasons for its actions in transferring her to the job of assistant principal and in choosing a male candidate for the open principal position.

Plaintiff's Second Amended Complaint also alleges violations of her substantive due process rights, but Defendant argues that Plaintiff has failed to specify what due process was violated. Plaintiff in response to that argument focuses solely on her equal protection claim. Because Plaintiff does not flesh out a due process claim in either her Complaint or her response to Defendant's Motion for Summary Judgment, summary judgment is appropriate on that claim as well.

D.     Count IV: Retaliation Claim

Defendant moves to dismiss Plaintiff's retaliation claim, which is based on Plaintiff's assertion that she was fired for filing a Charge of Discrimination with the EEOC. Title VII of the Civil Rights Act makes it unlawful for an employer to retaliate against an employee who has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding or hearing under the Act. 42 U.S.C. § 2000e–3(a). "A retaliation claim requires proof that the plaintiff suffered an adverse employment action because of [her] statutorily protected activity." *Lord v. High Voltage Software, Inc.,* 839 F.3d 556 (7th Cir. 2016). To prevail, Plaintiff would need to prove that (1) she engaged in activity protected by the statute; (2) she suffered an adverse employment action; and (3) there is a causal link between the protected activity and the adverse action. *Id.* Again, evidence should be considered as a whole, and the burden is on the non-moving party to demonstrate that genuine issues exist for trial. *Matsushita Elec. Indus. Co.*, 475 U.S. at 587; *Ortiz,* 434 F.3d at 675.

The parties agree that Plaintiff engaged in a protected activity when she filed her EEOC Charge of Discrimination on October 1, 2014. They disagree, however, as to whether Defendant's issuance of a non-renewal letter to Plaintiff on February 25, 2016, constituted an adverse action, and as to the existence of any link between Plaintiff's protected activity and the non-renewal notice. Defendant argues that its issuance of a non-renewal notice was "standard practice" that arose "due to financial constraints" and school closures, not a retaliatory act.[2] Defendant also notes that Mr. Cain and numerous other administrators had also received similar letters, three of which are attached as exhibits to the Motion. In response, Plaintiff attempts to establish a causal link between her EEOC

---

[2] Defendant also notes for the first time in its reply that such notices are required under the Indiana Teachers' Tenure Law. Because this argument does not address anything discussed in Plaintiff's response, and arguments raised for the first time in reply are waived, the Court has not considered this fact in assessing Plaintiff's claim for the purposes of the instant Motion.

Charge and her non-renewal letter by looking to the "temporal proximity" between the two events, and by citing her own thirty-five years of scandal-free service to the school district.

Suspicious timing, on its own, is generally insufficient to sustain a case of retaliation; it is but one piece of evidence that would be assessed alongside other facts sufficient to lead a reasonable jury to conclude that retaliation occurred. *Hobgood v. Ill. Gaming Bd.*, 731 F.3d 635, 643-645 (7th Cir. 2013); *Coleman v. Donahoe,* 667 F.3d 835, 860-861 (7th Cir. 2012). Plaintiff does not argue that similarly-situated employees who did not file EEOC claims were treated differently than she was. She does not address Defendant's arguments that the non-renewal was "routine," that the school district had restructured its administration in response to shrinking enrollment and closing schools, and that Mr. Cain and other administrators also received similar notices. Under those circumstances, despite Plaintiff's many years of apparently exemplary service to the district, no reasonable jury could conclude that Defendant's sending a non-renewal letter to Plaintiff in February 2015 was an act of retaliation for her filing an EEOC Charge. Therefore, summary judgment on the retaliation claim is appropriate.

**V.    Conclusion**

For the foregoing reasons, the Court hereby **GRANTS** Defendant's Motion for Summary Judgment [DE 94] as to Counts I, II, III, and IV of Plaintiff's Second Amended Complaint. Because Plaintiff has no remaining claims, Count VI, which requests specific forms of relief, is also dismissed.

The Court **VACATES** all scheduled deadlines and hearings in this matter, and **DIRECTS** the Clerk of Court to enter judgment in favor of Defendant Gary Community School Corporation and against Gloria Terry as to Counts I, II, III, IV, and VI of Plaintiff's Second Amended Complaint.

So ORDERED this 8th day of January, 2018.

        s/ John E. Martin
        MAGISTRATE JUDGE JOHN E. MARTIN
        UNITED STATES DISTRICT COURT

cc:    All counsel of record